1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| STEPHEN HAROLD GITCHELL,<br><br>        Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No.  1:21-cv-00157-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 16, 17) |

18
19

**I.**

20

**INTRODUCTION**

21

Plaintiff Stephen Harold Gitchell ("Plaintiff")[1] seeks judicial review of a final decision of

22

the Commissioner of Social Security ("Commissioner" or "Defendant") denying his concurrently

23

submitted applications for Social Security benefits pursuant to Title II and Title XVI of the Social

24

Security Act.   The matter is currently before the Court on the parties' briefs, which were

25
26
27
28

---

[1] The Court notes the introductory statement of the opening brief identifies Lisa Marie Torrecillas as the plaintiff in this action; however, the caption and substantive arguments and references to the record indicate the brief concerns Mr. Gitchell and the Court considers the initial identification of Ms. Torrecillas to be a "cut and paste" error and construes the appeal as asserted on behalf of Mr. Gitchell.

1  submitted without oral argument, to Magistrate Judge Stanley A. Boone.[2]  For the reasons set

2  forth below, Plaintiff's appeal shall be denied.

3                                                   **II.**

4                                         **BACKGROUND**[3]

5          Plaintiff concurrently filed the instant applications for Social Security benefits under Title

6  II and for Supplemental Security Income ("SSI") under Title XVI on June 21, 2018, alleging

7  disability beginning July 1, 2003.  (See Admin. Rec. ("AR") 238–41, ECF Nos. 13-1, 13-2.)

8  Plaintiff's claims were initially denied on September 17, 2018, and denied upon reconsideration

9  on December 12, 2018.  (AR 101–02, 131–32.)  On May 7, 2020, Plaintiff, represented by

10 counsel,[4] appeared via telephonic conference, for an administrative hearing before ALJ Kathleen

11 Lamb (the "ALJ").  (AR 44–75.)  Vocational expert ("VE") Pat W. Pauline, also testified at the

12 hearing.  On July 14, 2020, the ALJ issued a decision denying benefits.  (AR 21–43.)  On

13 December 9, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's

14 decision the final decision of the Commissioner.  (AR 10–15.)

15         Plaintiff initiated this action in federal court on February 8, 2021, and seeks judicial

16 review of the denial of his applications for benefits.  (ECF No. 1.)  The Commissioner lodged the

17 administrative record on June 17, 2022.  (ECF No. 13.)  On September 15, 2022, Plaintiff filed

18 his opening brief.  (ECF No. 16.)  On October 31, 2022, Defendant filed a brief in opposition.

19 (ECF No. 17.)  No reply brief was filed, and the matter is now deemed submitted on the

20 pleadings.

21 ///

22 ///

23
24 [2]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been
    assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 7, 10, 11.)

25 [3]  For ease of reference, the Court will refer to the administrative record by the pagination provided by the
    Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the
26 parties' briefings by their ECF pagination.

27 [4]  At the administrative level, Plaintiff was represented by attorney Lars A. Christenson and Dallan B. Christenson, of
    Christenson Law Firm, LLP.  (See AR 143.)  Lars Christenson represented Plaintiff at the hearing before the ALJ.
    (See AR 24.)  Plaintiff is currently represented by attorney Jonathan O. Pena, of the law firm Pena & Bromberg, PC.
28 (See ECF No. 16 at 1.)

1

**III.**

2

**LEGAL STANDARD**

3

**A.      The Disability Standard**

4

To qualify for disability insurance benefits under the Social Security Act, a claimant must

5

show he is unable "to engage in any substantial gainful activity by reason of any medically

6

determinable physical or mental impairment[5] which can be expected to result in death or which

7

has lasted or can be expected to last for a continuous period of not less than 12 months."  42

8

U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation

9

process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[6] Batson v.

10

Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the

11

sequential evaluation in assessing whether the claimant is disabled are:

12

13

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

14

15

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

16

17

18

> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

19

20

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

21

22

23

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

24

25

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

26

27

[6] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks both disability and SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to both claims addressed in the instant matter.

28

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[7] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE. See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

---

[7] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

**B.      Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in her decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, July 17, 2020 (AR 27–37):

At step one, the ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2007, and Plaintiff has not engaged in substantial gainful activity since July 1, 2003, the alleged onset date.  (AR 27 (citing 20 C.F.R. §§ 404.1571 et seq.; 416.971 et seq.).)

At step two, the ALJ determined Plaintiff has the following severe impairments: migraine headaches and T9 compression fracture.  (Id. (citing 20 C.F.R. §§ 404.1520(c); 416.920(c)).)  The ALJ also noted Plaintiff has nonsevere impairments of hypertension, insomnia, hyperlipidemia, tobacco use disorder, and major depressive disorder.  (AR 28.)  Nonetheless, the ALJ noted she considered any potential effects these purported impairments might cause or contribute in combination with Plaintiff's other impairments to the RFC.  (Id.)

The ALJ also considered Plaintiff's mental impairment, and determined it did not meet or medically equal the criteria of any listing.  More specifically, the ALJ determined Plaintiff does not satisfy the paragraph B criteria because his limitations in the four broad functional areas are all of mild severity.[8]  (AR 28–30.)

---

[8] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  Id.  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  Id.  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  Id.  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  Id.  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  Id.  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  Id.

1    At step three, the ALJ determined Plaintiff does not have an impairment or combination of

2  impairments that meets or medically equals the severity of one of the listed impairments in 20

3  C.F.R. Part 404, Subpart P, Appendix 1.  (AR 30–31 (citing 20 C.F.R. §§ 404.1520(d); 404.1525;

4  404.1526; 416.920(d); 416.925; 416.926).)

5    Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform:

6    **medium work as defined in 20 CFR 404.1567(c) and
7    416.967(c)[9] except the claimant can never climb ladders, ropes
     or scaffolds but can frequently climb ramps or stairs, stoop,
8    crouch and crawl. He can tolerate moderate noise such as that
     of a business office, department store, grocery store or light
9    traffic. He must not have to work in direct sunlight. He can
     tolerate frequent exposure to hazards such as unprotected
10   heights and heavy mechanical machinery (like a jackhammer
     or tractor).**

11  (AR 31–36 (citing 20 C.F.R. §§ 404.1529; 416.929; SSR 16-3p, <u>available at</u> 2017 WL 5180304

12  (Oct. 25, 2017)) (emphasis in original).)

13   At step four, the ALJ found Plaintiff does not have any past relevant work.  (AR 36 (citing

14  20 C.F.R. §§ 404.1565; 416.965).)

15   At step five, the ALJ noted Plaintiff was born on March 22, 1964, and was 39 years old

16  (which is defined as a younger individual age 18–49) on the alleged disability onset date; Plaintiff

17  has at least a high school education and is able to communicate in English; and transferability of

18  job skills is not material to the determination of disability because Plaintiff does not have past

19  relevant work.  (<u>Id.</u> (citing 20 C.F.R. §§ 404.1563; 416.963; 404.1564; 416.964; SSR 82-41,

20  <u>available at</u> 1982 WL 31389 (Jan. 1, 1982); 20 C.F.R. Part 404, Subpart P, Appendix 2).)

21  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are

22  jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as:

23  • <u>Cleaner, laboratory equipment</u> (Dictionary of Occupational Titles ("DOT") 381.687-022),

24     a medium work position with a specific vocational preparation ("SVP") level of 2, and

25     approximately 50,000 jobs available in the national economy;[10]

---

26  [9] The SSA regulations define "medium work" as involving lifting no more than 50 pounds at a time with frequent
27  lifting or carrying of objects weighing up to 25 pounds, plus a good deal of walking or standing, or—when it involves
    sitting most of the time—some pushing and pulling of arm or leg controls.  <u>See</u> 20 C.F.R. § 404.1567.

28  [10] While the ALJ's decision only identifies one job position as an example of work in the national economy available

1   (AR 36–37 (citing 20 C.F.R. §§ 404.1569; 404.1569(a); 416.969; 416.969(a); 20 C.F.R. Part 404,

2   Subpart P, Appendix 2; SSR 83-11, <u>available at</u> 1983 WL 31252 (Jan. 1, 1983); SSR 83-12,

3   <u>available at</u> 1983 WL 31253 (Jan. 1, 1983); SSR 83-14, <u>available at</u> 1983 WL 31254 (Jan. 1,

4   1983); SSR 85-15, <u>available at</u> 1985 WL 56857 (Jan. 1, 1985)).)  With respect to the identified

5   jobs, the ALJ noted the VE's testimony was consistent with the DOT and, with respect to the

6   specified RFC limitations, the VE's testimony was based on her professional experience.  (AR

7   37.)

8       Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social

9   Security Act, from July 1, 2003 (the alleged onset date), through July 17, 2020 (the date of

10   decision).  (AR 37–38 (citing 20 C.F.R. §§ 404.1520(g); 416.920(g)).)

11   **V.**

12   **DISCUSSION**

13       Plaintiff asserts three issues on appeal: (1) logical errors in the ALJ's assessed RFC

14   compel remand; (2) the ALJ failed to include work-related limitations in the RFC consistent with

15   the nature and intensity of Plaintiff's limitations and failed to offer legitimate reasons for

16   rejecting Plaintiff's subjective complaints; and (3) the ALJ improperly rejected the opinion of Dr.

17   Saleh. (ECF No. 16 at 1, 8–15.)  The Court shall first address Plaintiff's arguments regarding the

18   ALJ's evaluation of the subjective and medical opinion testimony, and shall then address

19   Plaintiff's RFC argument.

20   **A.**    **Whether the ALJ Offered Legitimate Reasons for Rejecting Plaintiff's**
         **Subjective Symptom Testimony**

21

22       Plaintiff argues the ALJ failed to identify sufficient reasons for rejecting his subjective

23   symptom testimony.  (<u>Id.</u> at 10–13.)  Consequently, Plaintiff contends the RFC determination,

24   which does not properly address the limitations to which Plaintiff testified, is unsupported by the

25   substantial evidence.

26   _____

27   to Plaintiff, the Court notes the VE also identified two other available positions during the May 7, 2020 hearing based
     on the same hypothetical: (1) Laborer, Stores (DOT 922.687-058, medium unskilled work, with 115,000 jobs
28   available); and (2) Hospital Cleaner (DOT 323.687-010, medium unskilled work, SVP 2, with 42,000 jobs available).
     (AR 72.)

1          1.      Plaintiff's Testimony and Symptom Allegations

2          Plaintiff alleges disability based on migraines, back pain, and depression.  (AR 273.)

3   Plaintiff alleges his disability began on July 1, 2003, which is when he lost his long-term

4   maintenance job.  (AR 52–53, 242.)  Plaintiff acknowledged, however, he submitted no records

5   prior to June 2018, and did not receive treatment prior to that time.  (AR 53, 59.)  Plaintiff

6   testified that he did not seek treatment before that time for his back because he "had it in for

7   doctors for a while."  (AR 59.)  Plaintiff explained he previously held this attitude towards

8   doctors because he underwent two deviated septum surgeries to fix his migraine situation, but the

9   surgeries were ineffective.  (Id.)  Plaintiff also acknowledged there were gaps in his treatment

10  after 2018, and that his last appointment was nearly a year ago.  (AR 60.)  Nor has Plaintiff had

11  an MRI taken since 2018.  (Id.)  Plaintiff attributed the year-long delay solely to the Medi-Cal

12  system.  (Id.)

13         Plaintiff testified that he got a GED and completed some college, including certification as

14  a first responder.  (AR 53–54.)  In 2001 and 2004, Plaintiff was self-employed.  (AR 58.)

15  Plaintiff testified that, in 2005, he injured his back while helping his son move.  (Id.)

16         Plaintiff currently lives with and assists his mother, who has Alzheimer's.  (AR 63.)

17  There are also long-term caregivers who have assisted with his mother three times per week,

18  since November 2019.  (Id.)  Plaintiff testified that he makes meals, reminds his mother to take

19  her medications, takes care of her, washes dishes, and does the grocery shopping.  (Id.)  In his

20  disability application, Plaintiff additionally reported that he drives his mother to go shopping and

21  to doctor's appointments, deposits and withdraws funds for her, and he cleans up the house, does

22  yard work, and does home maintenance.  (See AR 301–02.)  Plaintiff reported he goes outside, on

23  average, three times per day.  (AR 303.)  Plaintiff reported that his ability to complete tasks

24  depends on whether or not he is experiencing a migraine headache.  (AR 301.)  Plaintiff reported

25  he is able to tend to his own grooming and hygiene needs, and can handle money.  (AR 301–02,

26  303.)  Prior to the coronavirus pandemic, he used to be very active skiing, playing tennis, and

27  hiking; now, he currently watches TV, swims in his nephew's pool a couple times per month,

28  takes short walks, tries to spend time with his children, and goes camping and fishing.  (AR 304.)

1    Plaintiff indicated he stopped many social activities because he is too "broke," and too busy

2    taking care of his mother.  (Id.)  In 2019, Plaintiff drove 250 miles to help his son move.  (AR

3    66.)

4         Plaintiff also testified that he helps his sons fix their vehicles and/or performs maintenance

5    on the vehicles approximately every six months.  (AR 54.)  Plaintiff testified one of his sons is in

6    the military and Plaintiff takes care of that son's dog and walks the dog two to three times per

7    week.  (AR 65.)  Plaintiff testified that, if he vacuums for 30 minutes or after performing chores,

8    he is off his feet for two to four hours.  (AR 63, 64.)  Plaintiff testified his son usually does most

9    of the yard work.  (AR 65.)

10        Plaintiff testified he has been getting migraines since he was 13 years old.  (AR 59.)

11   Plaintiff testified his migraines typically last four to eight hours, and vary in severity.  (AR 61.)

12   Plaintiff testified that he had difficulty distinguishing a regular headache from a migraine.  (Id.)

13   Plaintiff testified that allergies, chocolate and bananas, alcohol, changes in the weather, changes

14   from high to low pressures, and too much sun can trigger his migraines.   (AR 66–67.)

15   Meanwhile, being in loud environments did not trigger the migraines.  (AR 67.)  However,

16   Plaintiff testified that, once he starts having a migraine, he cannot handle noise or light.  (Id.)

17   Plaintiff reported that he never knows when a migraine will occur; when they do, they affect his

18   concentration, focus, attitude, and sleep.  (AR 300.)  Plaintiff further reported experiencing

19   depression with his pain, stating it was a daily fight to motivate himself or get excited about

20   anything.  (AR 300, 302.)

21        Plaintiff previously treated his migraines while working by taking "[a] lot of Excedrin and

22   a lot of Diet Pepsi."  (AR 59–60.)  Plaintiff testified that, when he was still working, he would

23   continue to work with his migraine until he threw up, and then he would stop.  (AR 67.)  Since

24   2018, Plaintiff takes sumatriptan for his migraines, but it "knocks [him] out."  (AR 61.)  Plaintiff

25   also receives Ajovy injections, which is beneficial and does not produce side effects, but Plaintiff

26   testified that there is sometimes a delay in him receiving them, which makes the treatment less

27   effective.  (AR 61, 62.)

28        Regarding his back pain, Plaintiff testified he experiences mid- and lower-back pain, that

sometimes transfers to his chest and feels like a heart attack.  (AR 67–68.)  Plaintiff testified he experiences back pain all the time, at a two to ten on the pain scale, depending on what he is doing.  (AR 68.)  For example, Plaintiff testified that, after washing the dishes, his pain will be at a six to eight.  (Id.)  Bending or sitting for too long, or walking over 30 minutes aggravates the pain.  (Id.)  Plaintiff testified he can lift around 20 to 25 pounds, at most.  (Id.)  Plaintiff reported, as a result of his impairments, he has difficulty lifting, walking, squatting, standing, completing tasks, concentrating, following instructions, and getting along with others.  (AR 305.)  However, Plaintiff also reported he "get[s] along with everyone."  (AR 306.)  Plaintiff testified he had started physical therapy (Plaintiff attended approximately three appointments), which seemed to be helpful, but he had to stop attending because of the coronavirus.  (AR 62–63.)  Plaintiff testified that he does home exercises and stretches for approximately 15 minutes per day.  (AR 63.)

2.    Legal Standard[11]

The ALJ is responsible for determining credibility,[12] resolving conflicts in medical testimony, and resolving ambiguities.  Andrews, 53 F.3d at 1039.  A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").

Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.

---

[11]   Although Defendant emphasizes disagreement with the "clear and convincing reasons" standard in order to preserve the issue for future appeals, Defendant acknowledges it is the applicable standard for weighing credibility in the Ninth Circuit.  (ECF No. 17 at 9 n.3.)

[12]   SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, at *1-2.

If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

> If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.

Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony. See Burch, 400 F.3d at 680–81; see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence).

Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and its disabling effects." Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). Indeed, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its

own to meet the clear and convincing standard.  See Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Woods v. Comm'r of Soc. Sec. (Woods I), No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be sufficient." (emphasis in original)).

Additional factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the claimant's administrative record.  SSR 16-3p, at *5.

Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's subjective complaint, the Court "will not engage in second-guessing."  Thomas, 278 F.3d at 959.

3.    Analysis

As noted, the ALJ determined Plaintiff has the severe impairments of migraine headaches and T9 compression fracture (AR 27), and Plaintiff has not challenged this finding.  As a result, the ALJ was required to make a credibility finding as to Plaintiff's testimony.  Valentine, 574 F.3d at 693; Lambert, 980 F.3d at 1277.  Because the ALJ made no finding that Plaintiff was

malingering, she was required to give clear and convincing reasons as to why she did not find Plaintiff's subjective contentions about his limitations to be persuasive.  Id.

### a.      Allegations Uncorroborated by the Medical Record

At the outset, the ALJ noted Plaintiff alleged an onset disability date of July 1, 2003; however, he failed to provide any medical evidence prior to February 2018.  (AR 32.)  Thus, the ALJ concluded that, while Plaintiff reported back pain since his twenties and thirties, and migraine headaches from when he previously worked, the evidence of record does not include objective findings to support his allegations.  This finding was particularly relevant with respect to Plaintiff's Title II claim, as his date last insured was March 31, 2007.  In addition, the ALJ noted the July 26, 2018 imaging record showing Plaintiff's compression fracture at the T9 vertebra was indeterminate as to the age of the fracture.  (AR 32–33.)  Therefore, the imaging record does not corroborate Plaintiff's allegation of an onset date of 2003.

With respect to Plaintiff's migraine headaches, the ALJ also noted Plaintiff reported he experienced migraine headaches three to five times per week, that they worsened during the prior two years, and that Plaintiff reported he experienced aura, photo/phonophobia, nausea, and vomiting.  (AR 32.)  However, the ALJ noted the medical records showed Plaintiff's migraines were described as not intractable, and without status migrainosus.  (Id. (citing AR 396, 485, 523, 525, 711).)  Thus, the objective medical evidence did not corroborate Plaintiff's allegations as to the severity of his symptoms.

Generally, as noted, a lack of objective medical evidence is a proper factor the ALJ may consider in weighing a claimant's testimony, but it cannot form the *sole* basis presented by the ALJ for rejecting pain testimony.  See Vertigan, 260 F.3d at 1049.  Nonetheless, the absence of any medical records whatsoever from 2003 to 2018 is certainly a strong factor to be considered in the credibility determination.  Moreover, the Court finds the ALJ presented additional valid reasons for discounting Plaintiff's testimony, as discussed herein.

### b.      Inconsistencies with the Medical Record

Another reason provided by the ALJ is that Plaintiff's allegations are inconsistent with the medical evidence.  (AR 32–33.)

For example, the ALJ noted Plaintiff's claim of a disability onset date of July 1, 2003, is inconsistent with the medical opinions of the State Agency consultants, Drs. Kiger and Nasrabadi, who opined that Plaintiff had insufficient evidence for the Title II claim prior to the date last insured, March 31, 2007, due to submitting no records for this time period.  (AR 32 (citing AR 89–100, 117–30).)  See Stobie, 690 Fed. App'x at 911 (insufficient objective medical evidence to establish disability during the insured period constitutes a specific and legitimate clear and convincing reasons for rejecting symptom testimony); Carmickle, 533 F.3d at 1160 (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion).

The ALJ also noted Plaintiff's reported limitations in bending, walking, standing, and lifting weight due to back pain were inconsistent with the absence in the medical record of neurological signs or symptoms, such as radiating pain, numbness, or tingling into either upper extremity.  (AR 33 (citing AR 485).)  Further the ALJ explained,

> Although the claimant reported increased back pain and tingling in his hands after an incident of jumping down, he denied any other numbness or changes in his level of activities.  (Ex. 6F, p.114).  He reported improvement with chiropractic treatment.  (Ex. 2F, p.10; Ex. 4F, p. 5).  The claimant generally had examinations that showed full range of motion, with only mild pain at extreme range of motion.  (Ex. 2F, p.7 and 8; Ex. 5F, p.10 and 11; Ex. 6F, p.2 and 127).  The claimant generally had no sensory or motor deficits.  (Ex. 2F, p.8 and 30; Ex. 3F, p.15; Ex. 5F, p.10; Ex. 6F, p.2 and 10; Ex. 13F, p.33).  Straight leg raise testing was negative.  (Ex. 2F, p.15; Ex. 5F, p.18; Ex. 6F, p.11).  Additionally, the claimant generally had normal and unremarkable gait.  (Ex. 2F, p.8; Ex. 3F, p.15; Ex. 5F, p.18; Ex. 6F, p.3; Ex. 13F, p.33).

(Id.)  Similarly, regarding his allegations of limitations due to migraine headaches, the ALJ noted Plaintiff reported improvement with medication and mild to moderate improvement in the frequency of headaches when receiving injections (id. (citing AR 44–75, 396, 408, 492, 624, 632)); and the medical record shows Plaintiff generally had intact nerves and no focalization (id. (citing AR 385, 409, 493, 573)).

Finally, the ALJ noted that, even though Plaintiff alleged difficulty with focus and concentration, the record demonstrated Plaintiff had the ability to complete many activities of daily living, including care for his mother, drive, go to doctor's appointments, cook, clean, and

manage money (AR 29, 33 (citing AR 44–75, 301–03)); examinations showed Plaintiff generally had intact cognitive function, cooperative behavior, and good insight and judgment (AR 30 (citing AR 384–85, 409, 477, 493, 500, 510, 517, 709)); and Plaintiff's allegation was contradicted by the medical opinions of Drs. Aquino-Caro and Collado, who opined that Plaintiff only had a mild limitation in the ability to concentrate, persist, or maintain pace (id. (citing AR 83, 111)).

The ALJ's reference to the medical records to identify inconsistencies in Plaintiff's testimony constitutes a specific, clear, and convincing reason supported by substantial evidence in the record that supports the ALJ's adverse credibility determination. Lambert, 980 F.3d at 1277; Hairston, 827 Fed. App'x at 773; Carmickle, 533 F.3d at 1160; Woods I, 2022 WL 1524772, at *10 n.4.

In challenging the ALJ's credibility determination, Plaintiff argues the ALJ's rationale is "unconvincing and inconsistent with the totality of medical and other evidence." (ECF No. 16 at 11.) Plaintiff then proceeds to identify a number of records documenting his reports of continued headaches and pain and contends the ALJ failed to appropriately consider these records. (Id. at 11–12.) But the Court notes Plaintiff's argument, at most, constitutes an attempt to present an alternative interpretation of the evidence. As previously noted, this Court must defer to the decision of the ALJ where evidence exists to support more than one rational interpretation. Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992); see also Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999) (When the evidence presented could support either affirming or reversing the Commissioner's conclusions, the court cannot substitute its own judgment for that of the Commissioner). "As [the Court] cannot say that the ALJ's interpretation of the available evidence was not rational, the ALJ's conclusions were supported by substantial evidence." Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017).

Furthermore, the ALJ's findings that Plaintiff's allegations were not corroborated by the record and were contradicted by the evidence are clear reasons to discount Plaintiff's symptom allegations, and thus belie Plaintiff's argument that the ALJ failed to set forth reasons supported by the evidence for discounting his complaints of symptoms relative to migraine headaches (ECF

No. 16 at 11).  The Court also notes these reasons are supported by substantial evidence in the record and that, together, they are sufficient to justify the ALJ's adverse credibility determination. See, e.g., Stobie, 690 Fed. App'x at 911.  Nonetheless, in addition to the foregoing, the ALJ provided multiple other reasons in further support of her discounting Plaintiff's symptom testimony.

### c.   Conservative Treatment

Evidence that a claimant's medical treatment was relatively conservative may properly be considered in evaluating a claimant's subjective complaints.  See Tommasetti, 533 F.3d at 1039–40; Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted).

With respect to Plaintiff's migraine headaches, the ALJ noted Plaintiff only treated his migraines with medications.  (AR 32.)  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."  Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

Plaintiff appears to take issue with this finding on the basis that he alleged his medication came with severe sedative side effects nearly one half of the month and the ALJ failed to consider this side effect.  (ECF No. 16 at 12.)  This argument does not address the finding that Plaintiff reported 40% improvement from taking the medication, significantly reducing the number of migraines he experienced per month.  Rather, Plaintiff's argument appears to be a request for the Court to reweigh this medical evidence, which it cannot do.  Tommasetti, 533 F.3d at 1038 (the court will uphold the ALJ's conclusion where the evidence is susceptible to more than one rational interpretation).  Plaintiff's argument is therefore unavailing.

### d.   Inconsistent/Lack of Treatment

"The ALJ is permitted to consider lack of treatment in his credibility determination." Burch, 400 F.3d at 681; see also Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012), superseded by regulation on other grounds (claimant's "failure to assert a good reason for not seeking treatment," as well as asserting a reason that the ALJ determines is not believable, can

1  cast doubt on the sincerity of the claimant's pain testimony, as can a failure to seek psychiatric

2  treatment until after the claimant applies for disability benefits).

3        The ALJ noted that, although Plaintiff alleged an onset disability date of July 1, 2003, and

4  claimed back pain since his twenties and thirties and migraines since the time he was working,

5  Plaintiff produced no medical evidence of his condition prior to February 2018.  (AR 32.)

6  Indeed, during the May 7, 2020 hearing, the ALJ elicited testimony from Plaintiff acknowledging

7  that he that he did not seek treatment before February 2018, and that even after February 2018,

8  there were gaps in his treatment (*e.g.*, his last appointment was nearly a year ago).  (AR 59–60.)

9  As noted, the Ninth Circuit has held that "unexplained, or inadequately explained, failure to seek

10  treatment or follow a prescribed course of treatment … can cast doubt on the sincerity of the

11  claimant's [subjective symptom] testimony."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

12  Plaintiff does not dispute the ALJ's findings with respect to his gap in treatment or the failure to

13  produce any medical evidence prior to February 2018.  He is therefore deemed to have waived

14  argument on this issue.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash. v. Wash., 350 F.3d

15  925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were not actually argued

16  in appellant's opening brief" and will only "review … issues which are argued specifically and

17  distinctly in a party's opening brief.").

18        **e.**      **Activities of Daily Living (ADLs)**

19        Finally, the ALJ noted Plaintiff's allegations of totally debilitating impairments was

20  inconsistent with his reported ADLs, such as Plaintiff's ability to drive 250 miles to help his son

21  move and to continue to work on cars, as well as to go to doctor's appointments, care for his

22  mother, prepare simple meals, clean the house, manage money, shop in stores, spend time with

23  others, dress, bathe, shave, use the toilet, and care for his hair, go out alone, go swimming, and

24  walk and care for his son's dog.  (AR 29, 30, 33 (citing AR 44–75, 301–05, 403, 519, 547, 555,

25  579, 583).)  This finding constitutes a clear and convincing reason to support the ALJ's credibility

26  determination.  Molina, 674 F.3d at 1112–13; Valentine, 574 F.3d at 693.

27        Plaintiff takes issue with the ALJ's finding that he was able to complete ADLs and care

28  for his mother, noting the ALJ herself conceded that these actions were depending upon the level

of severity of Plaintiff's headache.  (ECF No. 16 at 12 (citing AR 32).)  However, even where a claimant's activities "suggest some difficulty functioning, they may [still] be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  Molina, 674 F.3d at 1112–13 (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine, 574 F.3d at 693).

In Valentine v. Astrue, for example, the ALJ determined the claimant "demonstrated better abilities than he acknowledged in his written statements and testimony" and that his "non-work activities … are inconsistent with the degree of impairment he alleges."  Valentine, 574 F.3d at 693.  The ALJ further remarked on the claimant's ADLs, but acknowledged these activities did not suggest that the claimant could return to his old job.  Id.  Instead, the ALJ indicated she thought the ADLs suggested the claimant's later claims about the severity of his limitations were exaggerated.  Id.  The Ninth Circuit found the ALJ provided clear and convincing reasons to reject the claimant's subjective complaint testimony because she identified evidence that directly contradicted the claimant's claims that his PTSD was so severe that he was unable to work, including contentions about how debilitating his fatigue was.  Id.

Similarly here, the ALJ determined Plaintiff's severe impairments prevented him from returning to his prior work.  Further, she fashioned an RFC that limited Plaintiff to medium work and included a number of additional restrictions.  (See AR 31.)  Nevertheless, the ALJ found Plaintiff's ADLs were inconsistent with subjective allegations of  debilitating migraines and back pain.  This finding is sufficient to support the ALJ's adverse credibility determination.  Valentine, 574 F.3d at 693; see also Gardner v. Barnhart, 73 Fed. App'x 193, 196 (9th Cir. 2003) (affirming ALJ's finding that claimant's ADLs were inconsistent with his allegations of total disability, stating "if the level of activity is inconsistent with the claimant's alleged limitations, this has bearing on the claimant's credibility.").

In sum, the ALJ has sufficiently identified multiple clear and convincing reasons in support of her determination that the record is inconsistent with the severity of Plaintiff's alleged symptoms, Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); S.S.R. 16-3p at *10, some of which Plaintiff did not dispute and is therefore deemed to have conceded.  See Ruiz v. Comm'r of

Soc. Sec. Admin., 490 Fed. App'x. 907, 908–09 (9th Cir. 2012) (affirming ALJ's decision to deny benefits and concluding that, because the ALJ listed nine rationale for rejecting the claimant's testimony and the claimant challenged only one of the rationale, the ALJ's conclusion would still be supported by the unchallenged rationale).  Accordingly, the Court finds the ALJ provided sufficient clear and convincing reasons supported by substantial evidence for discounting Plaintiff's pain testimony.

Finally having determined the ALJ properly discounted Plaintiff's pain testimony, the Court rejects Plaintiff's argument that the RFC was not based on substantial evidence due the ALJ's failure to properly consider his alleged limitations.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony).

**B.      Whether the ALJ Properly Evaluated the Medical Opinion Evidence**

Citing to a Ninth Circuit case from 1981, Plaintiff argues the ALJ failed to explain her determination that Dr. Selah's opinion was not persuasive under the appropriate standard for evaluating medical opinion evidence because she did not provide "full and detailed findings of fact," and "did not indicate the amount of weight given to various items of evidence." (ECF No. 16 at 14 (citing Lewin v. Schweiker, 654 F.2d 631, 634–35 (9th Cir. 1982) (internal quotation marks omitted)).)  Plaintiff further argues the ALJ made cursory findings of fact without explicitly stating what portions of the evidence she accepted or rejected, and essentially cherry-picked the record to reach her conclusions.  (See id.)  The Court applies the appropriate legal standard based on the Revised Regulations, effective March 27, 2017, and finds Plaintiff's arguments to be unavailing for the reasons discussed herein.[13]

1.      Legal Standard

Where, as here, a claim is filed after March 27, 2017, the revised Social Security Administration regulations apply to the ALJ's consideration of the medical evidence.  See

---

[13] In addition, the Court deems it worth noting that, while Plaintiff challenges the ALJ's evaluation of Dr. Selah's opinion, he has not challenged the ALJ's evaluation of the other medical opinions—including the opinions of Drs. Kiger and Nasrabadi, which the ALJ found persuasive to the extent they opined Plaintiff was capable of medium exertional work (AR 34).  As such, Plaintiff has waived any argument with respect to these other issues.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.

Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion of a treating physician.  Woods v. Kijakazi (Woods II), 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. § 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how she considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

### 2.  Dr. Selah's Physical Medical Source Statement

On August 23, 2019, Dr. Selah issued a check-the-box physical medical source statement. (AR 654–57.)  After seeing Plaintiff one to two times per month since May 2018, Dr. Selah diagnosed Plaintiff with migraines, wedge fracture at T9, intersegmental dysfunction, and lateral epicondylalgia.  (AR 654.)  He opined Plaintiff's prognosis was fair.

Dr. Selah opined Plaintiff could walk one block without rest or severe pain; sit 30 minutes at one time; stand 30 minutes at one time; sit less than two hours total in an eight-hour working day; stand and/or walk less than two hours total in an eight-hour working day; never lift or carry 50 pounds; rarely or occasionally lift and carry 20 pounds;[14] frequently lift and carry ten pounds; never twist, stoop/bend, or climb ladders; rarely or occasionally crouch/squat;[15] rarely climb stairs; have significant limitations reaching, handling, or fingering; needed a job that permits shifting positions at will from sitting, standing, or walking every thirty minutes for ten minutes; needed to take unscheduled breaks due to pain, paresthesia, numbness, and chronic fatigue; must elevate his legs level with the hips; could be off task twenty-five percent or more; was capable of

---

[14] Both boxes for "rarely" and "occasionally" are checked with respect to Plaintiff's ability to lift and carry 20 pounds.  (AR 656.)

[15] Again, both boxes for "rarely" and "occasionally" are checked with respect to Plaintiff's ability in this area.  (AR 656.)

1    only low stress work; and would be absent from work more than four days per month.  (AR 656–

2    57.)   Further, Dr. Saleh opined Plaintiff's physical condition was affected by depression and

3    anxiety.  (AR 654–55.)

4         3.    Analysis

5         The ALJ found Dr. Selah's opinion to be not persuasive.  (AR 34–35.)  With respect to the

6    supportability factor, the ALJ found the restrictive limitations included in Dr. Saleh's opinion

7    were not supported by the record because Dr. Saleh did not cite to specific objective findings to

8    support his opinions.   (AR 34.)   As to the consistency factor, the ALJ found the restrictive

9    limitations included in Dr. Saleh's opinion were not consistent with the evidence of record as a

10   whole.   More specifically, the ALJ identified several medical notes from the record that were

11   inconsistent with Dr. Saleh's extreme limitations:

12              The claimant received conservative treatment, and reported
                improvement with such treatment.  (Ex. 2F, p.10; Ex. 4F, p.5).
13              Upon examination, he had some tenderness to palpation at the mid
                thoracic level and difficulty maintaining neutral posture.  (Ex. 2F,
14              p.7 and 8; Ex. 4F, p.5; Ex. 6F, p.2).  He reported pain radiating
                from his thoracic spine to his chest.  (Ex. 6F, p.114).  However, he
15              generally had examinations that showed full range of motion, with
                some mild pain at extreme range of motion.  (Ex. 2F, p.7 and 8; Ex.
16              5F, p.10 and 11; Ex. 6F, p.2 and 127).  The claimant generally had
                no sensory or motor deficits.  (Ex. 2F, p.8 and 30; Ex. 3F, p.15; Ex.
17              5F, p.10; Ex. 6F, p.2 and 10; Ex. 13F, p.33).   He underwent
                negative straight leg raise testing.  (Ex. 2F, p.15; Ex. 5F, p.18; Ex.
18              6F, p.11).   The claimant did not have neurological signs or
                symptoms, such as radiating pain, numbness, or tingling into either
19              upper extremity.   (Ex. 4F, p.4).    Additionally, the claimant
                generally had normal and unremarkable gait.  (Ex. 2F, p.8; Ex. 3F,
20              p.15; Ex. 5F, p.18; Ex. 6F, p.3; Ex. 13F, p.33).   Regarding
                limitations due to migraine headaches, the claimant reported
21              improvement with medication and mild to moderate improvement
                in the frequency of headaches when receiving injections.  (Ex. 2F,
22              p.6 and 18; Ex. 5F, p.6; Ex. 6F, p.102 and 110; Hearing
                Testimony).  He generally had intact nerves and no focalization.
23              (Ex. 1F, p.9; Ex. 2F, p.19; Ex. 5F, p.7; Ex. 6F, p.51).  Further,
                regarding the claimant's ability to attend work or remain on task,
24              the claimant had an ability to complete many activities of daily
                living and care for his ailing mother.  (Ex. 5E, p. 6, 7, and 8;
25              Hearing Testimony).

26   (AR 34–35.)

27        The Ninth Circuit has held "the ALJ may permissibly reject check-off reports that do not

28   contain any explanation of the bases of their conclusions."  Ford, 950 F.3d at 1155 (citations

23

1   omitted); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)

2   (ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion

3   is brief, conclusory and inadequately supported by clinical findings."); Flowers v. Colvin, No.

4   3:16-CV-05025 JRC, 2016 WL 4120048, at *3 (W.D. Wash. Aug. 3, 2016) (ALJ may discount an

5   unexplained check-the-box form opinion that is unsupported or inconsistent with the treatment

6   records from that medical provider).  Furthermore, incongruity between a doctor's opinion and

7   the medical records constitutes substantial evidence to support an ALJ's reason for rejecting the

8   physician's opinion of the patient's limitations. Tommasetti, 533 F.3d at 1041; Ford, 950 F.3d at

9   1155; Batson, 359 F.3d at 1195 (inconsistency with the majority of objective medical evidence is

10  an appropriate reason for rejecting a physician's opinion); Andrews, 53 F.3d at 1041 (clinical

11  findings contradicting opinion constitute substantial evidence); Bayliss v. Barnhart, 427 F.3d

12  1211, 1216 (9th Cir. 2005) (inconsistencies with evidence in the record support discounting a

13  medical opinion).

14        Here, the ALJ found Dr. Selah's opinion unsupported because he did not cite to the record

15  in support of the limitations he identified, and the ALJ cited to multiple examples in the medical

16  record to demonstrate Dr. Selah's opined limitations were inconsistent with it.  Accordingly, the

17  Court finds the ALJ's analysis of the supportability and consistency factors relative to Dr. Selah's

18  medical opinion was appropriately considered and is based on substantial evidence from the

19  record. See Woods II, 32 F.4th at 792; Martinez V., 2021 WL 1947238, at *3; see also Ford, 950

20  F.3d at 1155; Tommasetti, 533 F.3d at 1041; Bayliss, 427 F.3d at 1216; Batson, 359 F.3d at 1195;

21  Bray, 554 F.3d at 1228.   Thus, Plaintiff's argument that the ALJ failed to explain her

22  determination that Dr. Selah's opinion was not persuasive under the appropriate legal standard is

23  unavailing.

24        Finally, in support of his cherry-picking argument, Plaintiff asserts substantial evidence in

25  the record—such as Plaintiff's reports that he suffers from debilitating headaches at least one half

26  of the month—supports Dr. Saleh's opinion that Plaintiff would be absent four or more days per

27  month.  (See ECF No. 16 at 14–15.)  The Court notes the Ninth Circuit's discussion in Gardner v.

28  Barnhart is instructive with respect to Plaintiff's cherry-picking argument.  In rejecting a similar

argument presented by the claimant in that case, the Ninth Circuit explained:

> [The claimant] also asserts that the ALJ took medical reports out of context and relied on them as such in making his decisions. The ALJ weighed all of the evidence he credited. The medical evidence in this case is extensive and could be interpreted in various ways. The ALJ interpreted it in a reasonable manner. When the evidence presented could support either affirming or reversing the Commissioner's conclusions, this court cannot substitute its own judgment for that of the Commissioner. Here, despite any allegation of evidence taken out of context, the ALJ's conclusions are supported by substantial evidence. The ALJ supported his evaluation with articulated analysis of the evidence and citation to specific substantial evidence in the record. He cited specific reports for his conclusions and gave sufficient legitimate reasons for rejecting others. This is all that he is required to do.

Gardner, 73 Fed. App'x at 195 (internal citations omitted).  For the same reasons articulated by the Ninth Circuit, the Court finds Plaintiff's cherry-picking argument unpersuasive here. Furthermore, notwithstanding the Court's finding that the ALJ's adverse credibility determination was supported by substantial evidence, see Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that testimony for which the ALJ has provided specific and legitimate reasons to discount be further considered at later steps in the disability analysis), it appears Plaintiff is again requesting the Court to reweigh the medical evidence by suggesting an alternative interpretation of the evidence.  However, as previously noted, the Court must uphold the ALJ's conclusion where the evidence is susceptible to more than one rational interpretation. Tommasetti, 533 F.3d at 1038; see also Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).

On this record, the Court finds the ALJ reasonably interpreted the objective medical evidence and substantial evidence supports the ALJ's relevant findings.

### C.     Whether the RFC is Supported by Substantial Evidence

Though Plaintiff's heading depicting this challenged issue, "logical errors in the ALJ's assessed RFC compel remand," is a bit confusing, Plaintiff appears to take issue with several points of evidence that the ALJ considered or failed to consider in reaching the RFC determination.  As such, the Court construes Plaintiff's challenge to the ALJ's decision as a challenge to whether the ALJ's RFC determination is supported by substantial evidence in the

1    record.

2          1.    Legal Standard

3          The RFC is an assessment of the sustained, work-related physical and mental activities the

4    claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§

5    404.1520(e), 404.1545(a), 416.945(a);  see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th

6    Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2.  Thus, it

7    represents the maximum amount of work the claimant is able to perform based on all the relevant

8    evidence in the record.  See id.; see also 20 C.F.R. § 416.945(a)(3) (RFC determination must be

9    "based on all of the relevant medical and other evidence.").  As previously noted, the RFC is not a

10   medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20

11   C.F.R. §§ 404.1527(d)(2), 404.1546(c);  Vertigan, 260 F.3d at 1049 ("It is clear that it is the

12   responsibility of the ALJ, not the claimant's physician, to determine residual functional

13   capacity.") (citing 20 C.F.R. § 404.1545).  And where "the record contains conflicting medical

14   evidence, the ALJ is charged with determining credibility and resolving the conflict."  Benton v.

15   Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Batson, 359 F.3d at 1195; see also Lingenfelter,

16   504 F.3d at 1042 ("When evaluating the medical opinions of treating and examining physicians,

17   the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the

18   reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of

19   Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for

20   resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti, 533 F.3d

21   at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical

22   evidence.").

23          In reviewing whether an ALJ committed error in determining the RFC, the relevant

24   inquiry is whether the medical evidence supports the ALJ's finding.  Stubbs-Danielson, 539 F.3d

25   at 1173–74 (holding the RFC assessment adequately captures restrictions if it is consistent with

26   the concrete limitations in the medical opinions); see also Schneider v. Comm'r, 433 Fed. Appx.

27   507, 509 (9th Cir. 2011) (ALJ's failure to address claimant's migraines was harmless because

28   medical record did not support finding that migraines would affect claimant's functioning at

work).  Accordingly, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  Althoff-Gromer v. Comm'r of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019) (citing Turner, 613 F.3d at 1222–23); see also Chavez v. Colvin, 654 Fed. App'x 374, 375 (10th Cir. 2016).  This is because it is within the ALJ's province to synthesize the medical evidence.  See Lingenfelter, 504 F.3d at 1042.

2.   Analysis

Here, the Court finds the RFC is supported by substantial evidence.  The ALJ provided extensive discussion of the medical evidence, as previously detailed and addressed, in support of her findings regarding Plaintiff's back pain and migraines which contributed to her RFC determination.  Further, the ALJ determined neither impairment (or combination of impairments) meets or medically equals a listing.  (AR 30–31.)  And the ALJ found the opinions of Drs. Kiger and Nasrabad to be persuasive to the extent they both opined Plaintiff was capable of medium exertional work.  (AR 34.)  Importantly, Plaintiff has not challenged any of these findings, which support the ALJ's RFC determination.  See Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash., 350 F.3d at 929.

Instead, Plaintiff largely argues the ALJ failed to consider his own assessment of his migraine headaches and Dr. Selah's opinion regarding the same, and instead substituted her own lay opinion of the evidence to reach the RFC determination.  (ECF No. 16 at 8.)  As a result, Plaintiff argues the RFC determination does not include proper limitations to account for his migraine headaches.  (Id. at 9.)  However, this Court has determined the ALJ properly evaluated the medical opinion evidence, including Dr. Selah's opinion, and her adverse credibility determination regarding Plaintiff's testimony was appropriately supported by substantial evidence.  Thus, to the extent the instant RFC argument merely rehashes Plaintiff's prior arguments, it fails.  See Stubbs-Danielson, 539 F.3d at 1175–76; Embrey, 849 F.2d at 423; see also Hairston, 827 Fed. App'x at 773 (summarily rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial evidence as "derivative of her preceding arguments addressed and rejected above.").

Plaintiff's remaining argument is also unavailing.  Plaintiff appears to argue the ALJ's

limitation regarding exposure to jackhammer noise is insufficient to address his migraine symptoms. (ECF No. 16 at 9.) But this argument is belied by a plain reading of the ALJ's decision. Notably, the RFC determination contains two limitations that address Plaintiff's migraines and demonstrate the ALJ considered Plaintiff's symptomology: (1) a limitation to only moderate noise; and (2) a limitation that Plaintiff must not have to work in direct sunlight. (Compare AR 31; with AR 66–67 (Plaintiff's testimony that too much sun, but not loud environments, can trigger migraines; and that once a migraine starts, he cannot handle noise or light).) For the reasons previously discussed, Plaintiff has not established further restrictions are warranted. Furthermore, it appears Plaintiff's argument is based on a misinterpretation of the ALJ's jackhammer restriction. The full context of the limitation provides, "[Plaintiff] can tolerate frequent exposure to hazards such as unprotected heights and heavy mechanical machinery (like a jackhammer or tractor)." (AR 31.) Thus, the passing reference to jackhammers pertains to the limitation on exposure to hazards, not noise. For this reason, as well, the Court finds no inherent contradiction or "logical errors" in the RFC determination.

## VI.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF No. 16) is DENIED; and

2. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Stephen Harold Gitchell and close this case.

IT IS SO ORDERED.

Dated: __February 6, 2023__

_____
UNITED STATES MAGISTRATE JUDGE